[No. 11947–8–I.   Division One.   December 3, 1984.]

PAUL HIGHSMITH, as *Guardian ad Litem,* ET AL, *Appellants,* v. J. C. PENNEY COMPANY, ET AL, *Respondents.*

*Eadie & Quirk* and *J. Richard Quirk,* for appellants.

*John G. Bergmann, Michael T. Watkins,* and *Tewell, Thorpe & Findlay; Inc., P.S.,* for respondents.

CALLOW, J.—Paul Highsmith, as guardian ad litem for LeAnne Highsmith, his minor daughter, and the marital community of Paul and Joyce Highsmith, appeal the partial summary judgment dismissing their claim against Montgomery Elevator Company for the design, manufacture and sale of a defective and unreasonably dangerous escalator. They assign error to the trial court's determination that such claim was barred by the 6–year limitation period of RCW 4.16.310.

Montgomery Elevator Company (Montgomery), the defendant, constructed and installed the escalators in the J.C. Penney Company store (J.C. Penney's) at the Southcenter Shopping Mall. On May 12, 1967, J.C. Penney's and Montgomery entered into an agreement whereby Montgomery would perform maintenance services on the escalators. Final acceptance of the escalators was on June 28, 1968. Since their installation, there has been no addition or

removal of any limit switches on the skirt panels nor any change in the design of the steps, particularly where the edges of the steps meet the skirt panel adjacent to the steps.

On April 3, 1979, LeAnne Highsmith, a minor, was descending one of the escalators in J.C. Penney's with her mother when her foot became trapped in the space between the side wall of the escalator and a step. She suffered permanent injury to her right foot consisting of loss of a portion of a toe together with soft tissue loss over the foot itself and accompanying scarring. The plaintiffs filed a complaint for damages on February 17, 1981, against J.C. Penney's and Montgomery. The plaintiffs' claim against J.C. Penney's was subsequently settled by the parties. On June 9, 1982 the trial court granted Montgomery's motion for a partial summary judgment dismissing with prejudice plaintiffs' claim that the escalator installed was defective and unreasonably dangerous. An issue as to negligent maintenance remains for trial. The Highsmiths appeal.

The sole issue is whether the construction and installation of an escalator constitutes an improvement upon real property subjecting a personal injury products liability claim based thereon to the period of repose of RCW 4.16-.310.

CR 56(c) permits the granting of a summary judgment "only if the pleadings, affidavits, depositions and admissions on file demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). Partial summary judgment was entered on June 9, 1982, dismissing Highsmith's products liability claim because it was not within the limitation period of RCW 4.16.300, .310. These statutes provide:

> RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or

repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.

RCW 4.16.300.

All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. The phrase "substantial completion of construction" shall mean the state of completion reached when an improvement upon real property may be used or occupied for its intended use. Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred: *Provided*, That this limitation shall not be asserted as a defense by any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues.

RCW 4.16.310.

The plaintiffs contend that RCW 4.16.300 *et seq.* is inapplicable to a products liability cause of action. They argue that since such claim arose out of the sale of a defective product the applicable statute of limitations is RCW 4.16-.080. RCW 4.16.080(2) bars products liability actions brought more than 3 years after a party discovers or reasonably should have discovered all essential elements of a possible cause of action. *See Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 663 P.2d 473 (1983); *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979).

■■ *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 676 P.2d 466 (1984) recently addressed this issue. The court considered the activity of the individuals involved rather than the characterization of the action, stating:

Thus, the statute focuses on individuals whose activities relate to construction of the improvement, rather than those who service or design items within the improvement. In interpreting similar statutes, other states restrict their application to contractors or individuals whose services contribute to the construction of the structure rather than property within it. For example, the New Jersey court stated the following rule:

> The legislative intent in adopting *N. J. S. A.* 2A:14–1.1, as elaborated by the *Rosenberg* opinion [*Rosenberg v. North Bergen,* 61 N.J. 190 (1972)], quite obviously was not to limit the exposure of manufacturers and purveyors of products which are used in the factory, shop or home, or those who service these products. As best we can perceive, the intent of the language of the statute was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real estate and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.

*Brown v. Jersey Cent. Power & Light Co.,* 163 N.J. Super. 179, 195, 394 A.2d 397 (1978).

We believe our statute also should be so limited. The test suggested by the *Brown* court protects individuals who work on structural aspects of the building but not manufacturers of heavy equipment or nonintegral systems within the building. As we read the statute, this latter group was not intended to be protected.

Furthermore, if these individuals were protected, they could easily avoid product liability law, if they desired, by simply bolting, welding the equipment or fastening it in some other manner to the building. Mechanical fastenings may attach a machine to the building, but they do not convert production equipment into realty or integrate machines into the building structure, for they are not necessary for the building to function as a building.

*Condit,* at 110–11. Hence, the inquiry is whether the construction and installation of the escalators constituted a system which is integrally a normal part of a structural

improvement to real estate and which is required for the structure to function as intended.

*Pinneo v. Stevens Pass, Inc.,* 14 Wn. App. 848, 851, 545 P.2d 1207 (1976), which held a ski lift to be an improvement to real property, stated as follows:

> The word "improvement" has been construed previously by a number of cases without reference to these statutes. The term was defined in *Siegloch v. Iroquois Mining Co.,* 106 Wash. 632, 181 P. 51 (1919), as any betterment of a permanent nature which added to the value of the property as real property, and all buildings, structures, and machinery of a permanent nature that tended to increase the value of the property were to be included. The decision states at page 636:
>
>> The term must mean improvements of the realty; that is to say, such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property. This would include buildings and structures of every kind, and *also such machinery as was placed thereon of a permanent nature and which tended to increase the value of the property for the purposes for which it was used;* . . .

(Italics ours.) *See also Hudesman v. Meriwether Leachman Assocs.,* 35 Wn. App. 318, 666 P.2d 937 (1983) and *Rodriguez v. Niemeyer,* 23 Wn. App. 398, 595 P.2d 952 (1979).

Courts in other jurisdictions with similar statutes have held that construction of an elevator constitutes an improvement to real property. *See Jones v. Ohio Bldg. Co.,* 4 Ohio Misc. 2d 10, 447 N.E.2d 776, 778–80 (C.P. 1982); *Ellerbe v. Otis Elevator Co.,* 618 S.W.2d 870, 872 (Tex. Civ. App. 1981), *appeal dismissed,* 459 U.S. 802 (1982); *Mitchell v. United Elevator Co.,* 290 Pa. Super. 476, 434 A.2d 1243, 1248–50 (1981). The court in *Mitchell,* at 488, stated:

> The lower court seems to be likening the building of an elevator system with all its myriad components, motors, cables, wiring and machinery to uncrating and plugging in a television set. The fact that the basic design of the elevator may be identical in different buildings does not render the elevator system any less an improvement to

real estate. The term improvement is defined in Black's Law Dictionary:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure . . . .

Black's Law Dictionary 682 (5th ed. 1979).

Certainly, the elevator system in this case is as much an improvement to real property as was the insulation material in the ceiling of the warehouse in the *Freezer Storage Inc. v. Armstrong Cork* [476 Pa. 270, 382 A.2d 715 (1978)] case cited above.

In many instances, an escalator system, like an elevator system, is a necessary component to a structural improvement to real property. Its function is to provide access to the various floors of a multi–storied building. This is particularly true where a department store is involved. Such a system operates as a stairway or passageway enabling customers and employees to ascend and descend quickly and effortlessly the different levels of the store. Consequently, an escalator system constitutes a permanent part of one of the mechanical systems necessary to the normal function of this particular improvement to real property.

Here, the uncontroverted evidence indicates that Montgomery constructed and installed the escalators in J.C. Penney's. The parties agree that the accident occurred more than 6 years after substantial completion of the installation of the escalator system. The plaintiffs' claim is therefore barred by RCW 4.16.300, .310.

The partial summary judgment of dismissal is affirmed.

DURHAM, C.J., and CORBETT, J., concur.