**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DAVID J. WELCH and LINDA WELCH, husband and wife,

Appellants,

v.

BRAND INSULATIONS, INC. and HASKELL CORPORATION,

Respondents,

and

AIR & LIQUID SYSTEMS CORPORATION, as Successor by Merger to BUFFALO PUMPS, INC.; ATLANTIC RICHFIELD COMPANY (ARCO); BP AMERICA, INC.; BP CORPORATION OF NORTH AMERICA, INC., as successor in interest to AMOCO, INC. and AMERICAN OIL COMPANY; BP PRODUCTS NORTH AMERCA INC., as successor in interest to AMOCO, INC. and AMERICAN OIL COMPANY; BW/IP, INC., f/k/a BORG-WARNER INDUSTRIAL PRODUCTS, successor-in-interest to BYRON JACKSON PUMPS; CARRIER CORPORATION; COOPER INDUSTRIES, INC., f/k/a THE COOPER-BESSEMER CORPORATION; ELECTROLUX HOME PRODUCTS, INC.; as successor-in-interest to COPES-VULCAN, INC.; FLOWSERVE US INC., solely as successor-in-interest to

No. 83745-1-I

DIVISION ONE

PUBLISHED OPINION

No. 83745-1-I/2

EDWARD VALVES, INC.; FOSTER WHEELER LLC; GENERAL ELECTRIC COMPANY; GOULDS PUMPS (IPG), LLC; IMO INDUSTRIES, INC., individually and as successor-in-interest to DE LAVAL TURBINE, INC. and liable for C.H. WHEELER; ITT LLC, as successor-in-interest to FOSTER VALVES; METALCLAD INSULATION LLC; METROPOLITAN LIFE INSURANCE COMPANY; NORTH COAST ELECTRIC COMPANY; PFIZER, INC.; P-G INDUSTRIES, INC., as successor-in-interest to PRYOR GIGGEY CO., INC.; SPIRAX SARCO, INC.; TATE ANDALE, LLC; THE NASH ENGINEERING COMPANY; UNION CARBIDE CORPORATION; VELAN VALVE CORPORATION; VIACOMCBS, INC.; TWC THE VALVE COMPANY, L.L.C.; WARREN PUMPS, LLC., Individually and as successor in interest to QUIMBY PUMP COMPANY; WEIR VALVE & CONTROLS USA INC., Individually and as successor-in-interest to ATWOOD & MORRILL CO., INC.; WESTINGHOUSE ELECTRIC CORPORATION, as successor-in-interest to B.F. STRUTEVANT COMPANY; THE WILLIAM POWELL COMPANY; A.W. CHESTERTON COMPANY; CATERPILLAR, INC.; and CROWN CORK & SEAL COMPANY, INC.,

Defendants.

CHUNG, J. — In Condit v. Lewis Refrigeration Co., 101 Wn.2d 106, 676 P.2d 466 (1984), our Supreme Court adopted a test to determine whether a claim is barred under the construction statute of repose because it arises from the defendant's construction, alteration, or repair of an improvement upon real

2

No. 83745-1-I/3

property. As relevant here, the statute applies only to activities that contribute to the construction of either (1) a structural improvement to real estate or (2) a system that is integrally a normal part of the kind of improvement in question and required for it to function as intended. Id. at 110-11.

Former welder and pipefitter David Welch and his wife Linda brought this lawsuit against Brand Insulations, Inc. (Brand) and Haskell Corporation (Haskell) for damages arising from Welch's[1] alleged exposure to asbestos-containing pipe insulation while working at the Atlantic Richfield Company (ARCO) "Cherry Point" refinery in the 1980s. The trial court granted summary judgment motions by both Brand and Haskell based on the statute of repose.

Applying Condit, we determine that neither defendant presented competent evidence to show that its insulation installation (in Brand's case) or insulation removal (in Haskell's case) contributed to the construction of either (1) a structural improvement in the refinery or (2) a system that is integrally a normal part of a refinery and required for the refinery to function as intended. Accordingly, because Brand and Haskell failed to satisfy their initial burdens on summary judgment, we reverse the trial court's summary dismissal of the Welches' claims against them and remand for further proceedings consistent with this opinion.

FACTS

In June 2021, the Welches sued Brand, Haskell, and several other defendants[2] for damages arising from Welch's alleged exposure to asbestos

---

[1] As used herein, "Welch" in the singular refers to David Welch.
[2] The Welches' claims against the other defendants are not at issue in this appeal.

3

from the 1960s into the 1990s. Although the Welches alleged that Welch's exposure occurred at various industrial sites, their claims against Brand and Haskell were based solely on Welch's work at the ARCO Cherry Point petroleum refinery. The Cherry Point refinery was originally built in the early 1970s, and Brand was the subcontractor retained by the general contractor, The Ralph M. Parsons Company (Parsons), to install thermal insulation "in various refinery units." Haskell was a contractor later retained by ARCO to perform various projects at the refinery.

The Welches allege that in the 1980s, Welch was exposed to asbestos-containing pipe insulation while working at the refinery on "turnarounds," which entailed repairing sections of the refinery. Welch testified that he worked on up to two turnarounds each year—one in the fall and one in the spring—and each would take "close to a month, maybe a little longer," for a total of about six times. He recalled working in several different areas of the refinery, including on the "fin-fans" of the "coker section," the "hydrocracker," the "sulfur unit," and the "smelter."

According to Welch, Haskell personnel regularly worked at the Cherry Point refinery when he was there, and he "typically worked in close range to Haskell," whose personnel he could distinguish from other workers because they wore differently colored hats. In his deposition, Welch said that Haskell personnel "did a lot of pipe work" and "fabricated a lot of pipe." He also recalled that Haskell workers were "changing out the insulation" on the pipes. The Welches claimed among other things that Haskell "removed or otherwise disturbed asbestos-

No. 83745-1-I/5

containing insulation without adopting safety precautions or following government regulations that it knew or should have known about to reduce or eliminate harm to bystanders." For purposes of this appeal, it is undisputed that Brand installed the insulation at issue during the initial construction of the refinery.

Brand and Haskell each moved for summary judgment, arguing that the Welches' claims were barred by the construction statute of repose. The trial court agreed. In doing so, it relied on Maxwell v. Atlantic Richfield Co., 15 Wn. App. 2d 569, 476 P.3d 645 (2020), rev. denied, 197 Wn.2d 1005 (2021), in which Division Two of this court concluded that Brand's activities related to the initial construction of the same refinery at issue here—the Cherry Point refinery—were covered by the statute of repose. The trial court granted Brand's and Haskell's motions and dismissed the Welches' claims with prejudice.

The Welches appeal.

ANALYSIS

I.     Summary Judgment Standard & Standard of Review

"Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rublee v. Carrier Corp., 192 Wn.2d 190, 198, 428 P.3d 1207 (2018). Put another way, summary judgment "should be granted only if, from all the evidence, a reasonable person could reach only one conclusion." Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); cf. Keck v. Collins, 184 Wn.2d 358, 362, 357 P.3d 1080 (2015) (summary judgment improper where a reasonable juror could return a verdict for the nonmoving party).

5

No. 83745-1-I/6

"Summary judgment 'is subject to a burden-shifting scheme.' " Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 326, 387 P.3d 1139 (2016) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)). The moving party bears the initial burden "to prove by uncontroverted facts that there is no genuine issue of material fact." Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

If the moving party satisfies its burden, then the burden shifts to the nonmoving party to "set forth specific facts evidencing a genuine issue of material fact for trial." Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). If, however, the moving party does not satisfy its initial burden of proof, "summary judgment should not be granted, regardless of whether the nonmoving party has submitted affidavits or other evidence in opposition to the motion." Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wn.2d 912, 915, 757 P.2d 507 (1988); see also Klossner v. San Juan County, 21 Wn. App. 689, 693, 586 P.2d 899 (1978) ("Upon the moving party's failure . . . to meet its initial burden of proof, it is unnecessary for the nonmovant to submit any evidence and the motion must be denied.").

We review orders on summary judgment de novo, engaging in the same inquiry as the trial court. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). We consider the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. Schaaf, 127 Wn.2d at 21. But we consider only the evidence and issues called to the trial court's attention. RAP 9.12.

6

No. 83745-1-I/7

II.     The Construction Statute of Repose

"A statute of repose terminates the right to file a claim after a specified time even if the injury has not yet occurred." Wash. State Major League Baseball Stadium Pub. Facs. Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 511, 296 P.3d 821 (2013). Washington's construction statute of repose, RCW 4.16.300, et seq., first explains the types of claims to which it applies:

> RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.

RCW 4.16.300. It then sets out the six-year repose period:

> All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. . . . Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred.

RCW 4.16.310. In short, the statute of repose bars any claim arising from a person having constructed, altered, or repaired an improvement upon real property or having performed certain services for the construction, alteration, or repair of an improvement on real property, if the claim does not accrue within the six-year repose period specified in RCW 4.16.310.[3]

---

[3] Haskell suggests throughout its brief that the statute of repose bars all claims that are not *filed* within the statutory repose period. Haskell is incorrect. The statute of repose is

7

Here, the parties dispute whether Brand's and Haskell's activities satisfied the statute's "improvement upon real property" requirement. Brand urges this court to follow Division Two's decision in Maxwell, which concluded that Brand's activities satisfied that requirement because they involved the original construction of the Cherry Point refinery. See Maxwell, 15 Wn. App. 2d at 584. Haskell similarly argues that under Maxwell, the Welches' claims are barred because the pipes that Haskell repaired or replaced "were part and parcel to the original construction of the 'entire refinery,' " which was an "improvement upon real property." We decline to follow Maxwell, as it departs from our Supreme Court's decision in Condit, which controls.

A.    *Condit v. Lewis Refrigeration Co.*

In Condit, the Washington Supreme Court examined the "improvement upon real property" requirement. Erin Condit was injured by a conveyor belt at a food processing plant. Condit, 101 Wn.2d at 108. The belt was part of a large "freezer tunnel" system used to quick-freeze cut vegetables. Id. Condit sued Lewis Refrigeration Company (LRC), which had manufactured and installed the system at the plant in 1965. Id. The trial court summarily dismissed Condit's claims based on the statute of repose, "reasoning that the freezer tunnel, the instrumentality that caused the injury, was an improvement upon real property." Id. at 109.

---

concerned with a claim's *accrual*, whereas a statute of limitations determines whether a claim is timely *filed*. See Wash. State Major League Baseball Stadium Pub. Facs. Dist., 176 Wn.2d at 511 ("Under the statute of repose . . . , the cause of action must have accrued within the six years, but once it has, . . . that is the end of the statute of repose inquiry. Whether an accrued claim is timely filed is a different question, involving the statute of limitations, not the statute of repose.").

This court affirmed, and our Supreme Court reversed. Id. at 109, 113. In doing so, the court first rejected the notion that the analysis for the "improvement upon real property" requirement should be drawn from other areas of property law, such as the law of fixtures. Id. at 109-10. It then observed that "[i]n interpreting similar statutes [of repose], other states restrict their application to contractors or individuals *whose services contribute to the construction of the structure rather than property within it*." Id. at 110 (emphasis added). It found particularly instructive a case interpreting New Jersey's statute of repose, which, like Washington's, contains an "improvement to real property" requirement. See Brown v. Jersey Central Power & Light Co., 163 N.J. Super. 179, 183, 394 A.2d 397 (1978). The Brown court adopted the following test to determine whether a person's services contribute to the construction of a structure, so as to satisfy the improvement to real property requirement:

> [T]he intent of the language of the statute was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real estate and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.

Id. at 195. In other words, under New Jersey's statute of repose, a person satisfies the improvement upon real property requirement only if their activities at issue contribute to, as relevant here, the construction of either: (1) "a structural improvement to real estate" or (2) "those systems, ordinarily mechanical systems, . . . which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended." Id.

9

No. 83745-1-I/10

Stating that Washington's statute of repose "also should be so limited," the Washington Supreme Court "adopt[ed] the test contained in Brown." Condit, 101 Wn.2d at 111-12. Applying that test, it then held that the statute of repose did not apply to Condit's claims against LRC because "[r]ather than designing an improvement on real property, [LRC] was engineering and designing accout[re]ments to the manufacturing process taking place within the improvement." Id. at 112. In so holding, the court observed that the freezer tunnel system LRC installed had been reported by the owner as personal property for tax purposes, and the owner had removed a similar system from another plant. Id.

The Condit court also distinguished its earlier decision in Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., where it held that a refrigeration system in a cold storage warehouse was an improvement upon real property. Yakima Fruit, 81 Wn.2d 528, 531, 503 P.2d 108 (1972). There, "[t]he building . . . in question could be utilized as a cold storage warehouse only if it remained refrigerated, as it had since 1919," the refrigeration system replaced an existing one "which had been an integral part of the building for forty years," and the system "could not be removed with both the system and building remaining intact." Id. The Condit court distinguished the facts in Yakima Fruit, noting that "[t]he refrigeration system, unlike the freezer tunnel here in issue, *was an integral part of the warehouse.* It is thus analogous to a building's central air conditioning system, which has been described as 'integrally a normal part of that kind of improvement.' " Condit, 101 Wn.2d at 112 (emphasis added) (quoting Brown,

10

No. 83745-1-I/11

163 N.J. Super. at 195).

In sum, under <u>Condit</u>, a defendant's construction activities satisfy the statute of repose's "improvement upon real property" requirement only if they contributed to the construction of either (1) a structural improvement to real estate or (2) an integral system, i.e., one that is integrally a normal part of the overall improvement and required for it to function as intended.[4]

B.      <u>Cases Subsequent to *Condit*</u>

Consistent with <u>Condit</u>, we have continued to apply a "system integral-ness" inquiry to determine whether a defendant's activities with regard to a system (as distinct from the structural improvement itself) are covered by the statute of repose. For example, in <u>Highsmith v. J.C. Penney & Co.</u>, we concluded that an escalator manufacturer's installation of an escalator system was covered by the statute of repose because "an escalator system constitutes a permanent part of one of the mechanical systems necessary to the normal function of this

---

[4] Brand asserts that <u>Condit</u> "stands only for the unremarkable proposition that the Statute only applies to contractors involved in the construction, alteration, repair, etc. of an improvement to real property and does not apply to manufacturers whose equipment or products are installed in the improvement." It then suggests that <u>Condit</u> is distinguishable because "Brand was not a manufacturer of equipment, and no one has claimed that it was." We reject Brand's facile reading of <u>Condit</u>. As one justice who was on the <u>Condit</u> court would later explain, citing <u>Condit</u>, "the crux" of whether a defendant's activities are covered by the statute of repose "does not lie in whether [the defendant] engaged in the activity of construction or manufacturing, *but rather in whether the result of its activity yielded an 'improvement upon real property' or a 'product' and in whether the injury was caused by the product or the improvement.*" <u>Washburn v. Beatt Equip. Co.</u>, 120 Wn.2d 246, 303-04, 840 P.2d 860 (1992) (Dolliver, J., concurring) (emphasis added; citations omitted). While the defendant in <u>Condit</u> was characterized as a "manufacturer" of the freezer tunnel system despite having also installed it, the core reasoning supporting <u>Condit</u>'s holding was that the defendant's activities in making and installing the freezer tunnel system did not yield an improvement upon real property. See <u>Condit</u>, 101 Wn.2d at 111 (observing that the test articulated in <u>Brown</u> "protects individuals who work on structural aspects of the building but not manufacturers of heavy equipment or nonintegral systems within the building"). In other words, to the extent the defendant in <u>Condit</u> was characterized as a manufacturer, that was not legally significant to the court's conclusion. The relevant question here is whether Brand constructed an "improvement upon real property" under the <u>Condit</u> test.

11

No. 83745-1-I/12

particular improvement to real property," i.e., a multi-story department store. 39 Wn. App. 57, 58, 63, 691 P.2d 976 (1984).

More recently, we applied Condit's system integral-ness inquiry in Puente v. Resources Conservation Co. International, 5 Wn. App. 2d 800, 428 P.3d 415 (2018). There, Javier Puente suffered fatal injuries in 2012, when 180-degree boric acid solution burst onto him from a boric acid evaporator system (BAES) at an anode aluminum foil manufacturing plant. Id. at 801, 805. The BAES had been installed in 2002 in an "environmental building" as part of a plant expansion that included expanding that building. Id. at 802-03, 805. The general contractor for the expansion contracted with GE Ionics Inc. and Resources Conservation Company International (collectively, RCCI) to design and build the BAES. Id. at 802-03. After Puente's death, his estate sued RCCI. Id. at 805. RCCI argued that the BAES was an improvement upon real property in that it was integral to the function of the environmental building, and the trial court dismissed the estate's claims as barred by the construction statute of repose. Id. at 806-07. We reversed, explaining that the BAES was neither part of the environmental building's structure nor necessary to its intended function, which was merely to house equipment. Id. at 812-13.

Most recently, Division Two addressed whether Brand's insulation installation activities at ARCO Cherry Point refinery, the same refinery at issue here, were covered by the statute of repose and held that they were, without analyzing whether they contributed to a structural improvement to real estate or to an integral system. Maxwell, 15 Wn. App. 2d at 584. In Maxwell, after being

12

No. 83745-1-I/13

diagnosed with mesothelioma, Edmond Brown sued Brand and others, alleging that he had been exposed to asbestos-containing insulation in 1971-72 during the construction of the Cherry Point refinery. Id. at 571-72. The trial court summarily dismissed Brown's claims against Brand based on the statute of repose. Id. at 574.

On appeal, citing Condit, Division Two stated that "[t]he statute of repose applies only to the construction of the structural aspects of a building," which included systems " 'which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.' " Id. at 579 (internal quotation marks omitted) (quoting Condit, 101 Wn.2d at 110-11). But Division Two did not then analyze whether Brand constructed a structural aspect of the Cherry Point refinery. While explaining that "Brand could . . . satisf[y] the improvement upon real property requirement . . . by showing that the insulation Brand installed was an integral part of the refinery necessary for the refinery to operate as intended," it specifically noted that Brand "did not submit any specific evidence regarding this issue." Id. at 586 n.5.

Instead of applying the Condit test that it had just set out, Division Two "reframed" the issue as "whether Brand's installation of . . . insulation under its subcontract with Parsons *involved* the construction of an improvement upon real property." Id. at 584 (emphasis added). Then, it concluded that Brand's insulation installation activities did "involve" the construction of an improvement upon real property based on the following four "undisputed facts": "(1) the Cherry Point refinery was an improvement upon real property, (2) Parsons was retained as the

13

No. 83745-1-I/14

general contractor to construct the entire refinery, (3) Parsons retained Brand as a subcontractor to assist in the construction of the refinery, and (4) [Brown's] claim arose from Brand's construction work on the refinery." Id. The court distinguished Condit and Puente on the basis that "[u]nlike in Condit and Puente, Brand did not merely install a new system within an *existing* real property improvement" but instead, "the insulation work occurred during and as part of the *original* construction of the [refinery]." Id. at 585 (emphasis added).

We are not bound by Division Two's decision in Maxwell, see In re Pers. Restraint of Arnold, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018), and we decline to adopt its reasoning for several reasons.

First, the Maxwell court's reframing of the inquiry to ask whether the defendant's activities "involve" the construction of an improvement upon real property is unsupported by the statutory language. Cf. Densley v. Dep't of Retirement Sys., 162 Wn.2d 210, 219, 173 P.3d 885 (2007) ("Statutory construction cannot be used to read additional words into the statute."). The statute of repose does not include the concept of "involving" construction of an improvement, but rather expressly applies only to claims "arising from such person having constructed, altered or repaired any improvement upon real property" or having engaged in specified activities "for any construction, alteration or repair of any improvement upon real property." RCW 4.16.300.

Moreover, while we agree with Division Two that the proper question is not

14

No. 83745-1-I/15

"whether the insulation constituted an improvement upon real property"[5] and that "[t]he focus is not on the materials that the person uses in the construction," Maxwell, 15 Wn. App. 2d at 583, we do not agree that the reframed question justifies an analytical approach different from that dictated by Condit.

The Maxwell court reasoned: "[A] piece of lumber is not itself an improvement upon real property. But a person who uses that lumber to frame a building would be *involved* in the construction of an improvement upon real property and would be protected by the statute of repose." Maxwell, 15 Wn. App. 2d at 584 (emphasis added). However, the lumber example does not justify adding the concept of "involvement" to the analysis. A person who uses lumber *to frame a building* is clearly engaged in the first category of construction activities described in Condit: " 'contribut[ing] to the . . . construction of a structural improvement to real estate.' " 101 Wn.2d at 110 (quoting Brown, 163 N.J. Super. at 195). The lumber example also adds nothing to the analysis with regard to the second category described in Condit: activities that contribute to the

_____

[5] To the extent the Welches argue that Brand must show that insulation *in isolation* is an improvement upon real property without considering Brand's activities with regard thereto, we reject that argument. The Welches rely on our unpublished opinion in Brandes v. Brand Insulations, Inc., No. 73748-1-I (Wash. Ct. App. Jan. 23, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/737481.pdf. But in Brandes, we merely observed that in denying Brand's motion for summary judgment in that case based on the statute of repose, the *trial court* determined that there were disputes of fact, which this court agreed were material to the issue that, as framed by Brand, was whether "the refinery's insulation is an improvement on real property." Id., slip op. at 5, 7. We made that observation in deciding whether to review the trial court's denial of summary judgment given that the matter had proceeded through trial. Id. at 6; cf. Kaplan v. Nw. Mut. Life Ins. Co., 115 Wn. App. 791, 804, 65 P.3d 16 (2003) ("Although it is generally true that a denial of summary judgment based on a determination that material facts are in dispute cannot be appealed following a trial on the merits, this is not the case where . . . the decision on summary judgment turned solely on a substantive issue of law."). Because we ultimately declined to review the trial court's denial of summary judgment, we did not squarely address the issues presented in the current appeal. Thus, the Welches' reliance on our unpublished opinion in Brandes is misplaced.

15

construction of a *system.* An analysis of this category requires an inquiry into the

system's integral-ness to the overall improvement and its necessity to the

intended function of that improvement. See Condit, 101 Wn.2d at 110.[6]

We also reject the proposition that whether the activities are part of a

wholly new construction or an existing system is determinative. The Maxwell

court distinguished Condit because Brand installed insulation as part of the

refinery's original construction, whereas in Condit, the freezer tunnel system at

issue "was installed *within* an *existing* real property improvement – a food

processing plant." Maxwell, 15 Wn. App. 2d at 584. But the Supreme Court's

opinion in Condit merely states that the freezer tunnel system was installed "at

Twin City Foods in 1965," 101 Wn.2d at 108; it does not state that the food

processing plant predated the freezer tunnel system—much less that it would

---

[6] Because the test articulated in Condit contemplates that the statute of repose can apply to activities that contribute to the construction of an integral system (as distinct from the structural improvement), the cases Brand cites to show that the statute of repose has been applied to the construction of nonstructural elements, such as gas service lines, are inapposite. To this end, Brand also characterizes the Welches' argument to be that the statute of repose is restricted to the structural elements of an improvement. Brand then relies on the 1986 and 2004 amendments to the statute to establish a contrary statutory interpretation. However, it is undisputed that the Cherry Point refinery was substantially complete by 1971 and that Brand completed its construction activities there no later than 1972, so the original 1967 version of the statute applies to the Welches' claims against Brand. See Cameron v. Atlantic Richfield Co., 8 Wn. App. 2d 795, 806, 442 P.3d 31 (2019) (date of substantial completion determines which version of the statute of repose applies). The later amendments do not reveal the legislature's intent in 1967, much less conclusively so.

Moreover, Brand construes the Welches' argument too narrowly. The thrust of the Welches' contentions on appeal is not that only structural improvements fall within the statute of repose, but that summary judgment was improper based on Condit, which, notably, construed the 1967 version of the statute. And as discussed, Condit contemplates the construction of not only structural improvements themselves, but also systems integral to such improvements. To this end, even if the Welches incorrectly construed Condit to limit the statute of repose to structural elements of an improvement, we would be obligated to apply the standards actually articulated by the Condit court. See Garza v. Perry, 25 Wn. App. 2d 433, 450 n.7, 523 P.3d 822 (2023) ("[O]ur Supreme Court has made clear that a court's 'obligation to follow the law remains the same regardless of the arguments raised by the parties before it.' " (quoting State v. Quismundo, 164 Wn.2d 499, 505-06, 192 P.3d 342 (2008))).

No. 83745-1-I/17

have made a difference in the analysis.[7]

Indeed, the statute applies to claims arising from a person "having *constructed*, *altered, or repaired* any improvement upon real property." RCW 4.16.300 (emphasis added). It makes no distinction between persons who *construct* an improvement upon real property and those who later *alter or repair* the same improvement. Thus, the <u>Maxwell</u> court's attempt to distinguish <u>Puente</u> on the basis that the BAES was installed "within an existing real property improvement – an environmental building," <u>Maxwell</u>, 15 Wn. App. 2d at 585, is flawed. Instead of analyzing whether the improvement was pre-existing, the <u>Puente</u> court properly conducted a system integral-ness inquiry with regard to the BAES, even though the record showed that it was installed as part of a plant expansion. Likewise, rather than focusing on whether Brand was "involved" in the original construction of the Cherry Point refinery, applying <u>Condit</u>, the proper focus in <u>Maxwell</u> should have been on whether Brand's activities contributed to a structural improvement or an integral system.[8]

---

[7] To the contrary, <u>Condit</u>'s reliance on <u>Brown</u> suggests that the timing of the system's installation would not have mattered. In <u>Brown</u>, the instrumentality of harm was a transfer switch assembly located in a "free-standing metal cabinet" within a building at a missile defense site. 163 N.J. Super. at 183. The plaintiff alleged that the cabinet's placement in relation to a window created conditions that caused the transfer switch to arc, severely burning the plaintiff. <u>Id.</u> at 183, 186-87. The relevant defendant in <u>Brown</u> was a company that the court assumed, for purposes of analysis, was involved in the initial design and construction of the overall defense site, including the cabinet in which the transfer switch assembly was housed. <u>Id.</u> at 188-89, 191-92. This would, under <u>Maxwell</u>'s reasoning, have been the end of the statute of repose analysis, i.e., under <u>Maxwell</u>, assuming the defendant was involved in the initial construction of the defense site, the statute of repose would apply. But the <u>Brown</u> court did not so hold. Instead, it upheld summary judgment only after considering, additionally, whether the transfer switch assembly cabinet was part of an integral system that was necessary to the normal function of the missile defense site. <u>Id.</u> at 196.

[8] At oral argument, Brand repeatedly asserted that to satisfy <u>Condit</u>, it needed to show only that its activities "related to" an improvement upon real property. Wash. Court of Appeals oral argument, <u>Welch v. Air & Liquid Sys. Corp.</u>, No. 83745-1-I (Jan. 12, 2023), at 12 min., 54 sec.; 13

17

No. 83745-1-I/18

We decline to adopt Division Two's reasoning in Maxwell to the extent it departs from Condit. Instead, we apply the test as stated in Condit and ask whether Brand and Haskell established as a matter of law that their work installing and removing insulation contributed to the construction of either a structural improvement or an integral system.[9]

III.     Application of the Construction Statute of Repose to Brand and Haskell

At summary judgment, both Brand and Haskell argued the Welches' claims were barred by the statute of repose, which they had each pleaded as an affirmative defense.[10] Haskell and Brand bear the ultimate burden to prove their affirmative defenses. See August v. U.S. Bancorp, 146 Wn. App. 328, 343, 190 P.3d 86 (2008) (defendant bears the burden of proof on an affirmative defense). And as the moving parties, to satisfy their initial burden on summary judgment, Haskell and Brand each must support its motion with uncontroverted facts

---

min., 8 sec.; 14 min., 12 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023011182. Brand is incorrect. Neither Condit nor the language of the statute of repose itself supports such an expansive reading of the statute's scope. The statute bars claims arising from only *statutorily specified* activities. See Pfeifer v. City of Bellingham, 112 Wn.2d 562, 569, 772 P.2d 1018 (1989) ("If the claim arises from those activities, the person is covered; if it does not, he is not covered."). And under Condit, for a construction activity to be among those specified in the statute, it is not enough for it to have merely "related to" an improvement upon real property. Rather, it must have contributed to the construction of either a structural improvement or an integral system. Condit, 101 Wn.2d at 110-11.

[9] Brand argues that we should affirm the trial court's summary judgment dismissal because the protections available under the statute of repose are "broad and sweeping." But none of the cases Brand relies on addressed the statute's "improvement upon real property" requirement. See Davis v. Baugh Indus. Contractors, Inc., 159 Wn.2d 413, 419, 150 P.3d 545 (2007) (deciding whether to abandon the common law doctrine of completion and acceptance); Parkridge Assocs., Ltd. v. Ledcor Indus., Inc., 113 Wn. App. 592, 602, 54 P.3d 225 (2002) (construing the phrase "*all* claims or causes of action[ ] of *any kind* . . . arising from . . . construction" to determine whether that phrase was broad enough to include equitable indemnity claims); 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apt. Sales Corp., 144 Wn.2d 570, 577-78, 29 P.3d 1249 (2001) (considering equal protection challenge to statute of repose). Thus, none justifies abandoning the test set forth in Condit, which specifically considered that requirement.

[10] Neither Brand nor Haskell disputed the Welches' characterization of the statute of repose as an affirmative defense.

18

establishing that the statute of repose bars the Welches' claims against it.

A.      Claim Against Brand

While it is undisputed that Brand's insulation installation activities constituted either construction or the performance or furnishing of construction services, the Welches argue that there is a genuine issue of material fact as to whether those construction activities satisfied the statute's "improvement upon real property" requirement. We agree with the Welches.

When Brand moved for summary judgment, it submitted evidence that in 1968, ARCO retained Parsons as general contractor "for the construction and erection" of the Cherry Point refinery. Brand also submitted evidence that in 1970, Parsons subcontracted with Brand to "[f]urnish all labor and labor supervision, material, tools and equipment . . . necessary for or incidental to the complete and proper installation of thermal insulation of columns, heat exchangers, vessel, reformers, tanks and piping in the various refinery units for the [ARCO] Cherry Point Refinery."[11] Further, Brand submitted evidence that the Cherry Point refinery began refining oil in November 1971, and that Brand's services at the refinery ended in March 1972, such that the six-year repose period expired, at its latest, in March 1978—i.e., before Welch's alleged asbestos exposure in the 1980s.

However, Brand pointed to no facts establishing that by installing insulation on the various components listed in its subcontract with Parsons, Brand contributed to the construction of either (1) " 'a structural improvement to

---

[11] Some capitalization omitted.

real estate' " or (2) " 'systems . . . which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.' " Condit, 101 Wn.2d at 110-11 (quoting Brown, 163 N.J. Super. at 195). Brand cited nothing in the record to establish the intended function of a petroleum refinery, what a petroleum refinery normally consists of in terms of structures and systems, or that the various refinery components it insulated or the insulation itself constituted a system that was integrally a normal part of a petroleum refinery and necessary for it to function as intended, as distinct from mere "accout[re]ments to the manufacturing process taking place within."[12] See Condit, 101 Wn.2d at 112.

To be sure, Brand asserted below that "insulated piping systems" are "integral to the function of the entire refinery." And Brand asserts on appeal that the components it insulated were necessary to safely transport hydrocarbons within the refinery and that those components, as well as the insulation Brand installed, were "integral to the refinery's ability to function as a refinery." But Brand points to no evidence in the record to support these assertions.[13] Nor is

---

[12] By comparison, in Stanley v. Ameren Illinois Co., another asbestos insulation case involving the Illinois statute of repose, the court concluded as a matter of law that asbestos-containing thermal insulation was an improvement to real property based on the record evidence that "power plants are designed to include thermal insulation at all times and would not operate without it"; that "[t]hermal insulation makes it possible for workers to be present inside the plant and for equipment to survive in the presence of extreme heat"; that "not insulating would be extremely inefficient from both an economic standpoint and from an energy-production standpoint"; and where the plaintiff failed to "refute[ ] the evidence that the insulation is an integral component of a power plant." 982 F. Supp. 2d 844, 862-63 (N.D. Ill. 2013). These types of predicate facts are absent here. Cf. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 233-34, 522 P.3d 80 (2022) (affidavits offered at summary judgment must proffer predicate facts that, if true, would establish the ultimate fact).

[13] Indeed, Brand conceded at oral argument that facts establishing that thermal insulation is integral to a refinery's function are "not specifically in the record." Wash. Court of Appeals oral argument, supra, at 11 min., 38 sec. – 12 min., 32 sec. Instead, the record in this case includes

20

there any evidence to support an inference that *all* of the activities of the general contractor and its subcontractors during the initial construction of a refinery must be for systems that are normally a part of that facility and necessary for it to function as intended, solely because of the timing of those activities.[14]

Without competent evidentiary support in the record, Brand did not satisfy its initial burden on summary judgment to establish that its activities are covered by the statute of repose. Consequently, on this record, we must reverse the trial court's decision summarily dismissing the Welches' claims against Brand.

B.      Claim Against Haskell

The Welches also argue that this court should reverse the summary judgment dismissal of their claims against Haskell based on the construction of the statute of repose. We agree.

Haskell argues that because Maxwell held Brand's installation of insulation "related to" the construction of the entire refinery, and because Haskell's work was to "fabricate, repair, or replace the same pipes that were part and parcel to the original construction of the 'entire refinery,' " its work, too, constituted construction, alteration, or repair of an "improvement upon real property" covered

---

evidence that the Cherry Point refinery began refining oil—i.e., functioning as intended—in 1971, but Brand's services continued into 1972. Viewed in the light most favorable to the Welches, this evidence supports an inference that Brand's insulation installation activities did *not* contribute to systems that are normally a part of a refinery and necessary for it to function as intended.

[14] As discussed above, we reject the Maxwell court's reasoning to the contrary. See Maxwell, 15 Wn. App. 2d at 585 ("[u]nlike in Condit and Puente, Brand did not merely install a new system within an *existing* real property improvement" but instead, "the insulation work occurred during and as part of the *original* construction of the [refinery]" (emphasis added)). Also, we note that even though Brand was a party in Maxwell, 15 Wn. App. 2d 569, our review of the summary judgment dismissal of claims against Brand here is of course limited to the record in this case.

by the statute of repose. But the outcome in Maxwell was, as discussed above, dictated by Brand's status as a subcontractor to the general contractor who had been retained to construct an "entire refinery" in the first instance. See Maxwell, 15 Wn. App. 2d at 585. In contrast, the Welches' claims against Haskell arise out of Haskell's activities during the 1980s in the already-completed refinery.[15] Accordingly, Haskell's reliance on Maxwell is misplaced.

Haskell also argues, with regard to its later work at the refinery, that "Haskell was at the Cherry Point facility to fabricate, repair or replace the same pipes that were part and parcel to the original construction of the 'entire refinery' " and "[t]here is no evidence to support a reasonable inference Haskell installed a new system within an existing improvement as was the case in Condit or Puente."

The record reflects that in the 1980s, ARCO retained Haskell for a number of projects at the Cherry Point refinery, including to (1) conduct "[m]echanical work associated with 'Upgrade Calcined Coke Loadout structure,' " including "extending safety rails and revamping the operator enclosure pressurization system"; (2) "[p]rovide the necessary supervision, labor, tools, equipment, and material for fabricating and installation of all process and utility piping and structural steel associated with the New Sulfur Storage Tank Installation,"

---

[15] We note that the record does not reflect when Haskell's relevant activities at the Cherry Point refinery ended so as to trigger the six-year repose period with regard to Haskell. Haskell asserts that "[a]ny alleged pipe construction/repairs Haskell performed during Mr. Welch's employment at Cherry Point were substantially completed more than six years prior to Appellants filing suit on June 1, 2021," but it does not point to any evidence in the record to support this assertion. And although it asserted at oral argument that "the work was completed in 1995," Wash. Court of Appeals oral argument, supra, at 17 min., 59 sec., we find no support in the record for that assertion.

including "insulation of piping and tank"; (3) "[p]rovide the necessary supervision, labor, tools, and install a cooling water supply and return ne [sic] from the coker condenser deck to the corner of 8th and D streets (southwest corner of Hydrocracker)"; (4) "[f]urnish labor, supervision, tools, equipment and material as required for fabricating and installing piping, electrical conduit and wiring in ARCO's Coker Boiler Feedwater Control Valve Manifolds"; (5) "[i]nstall [a] temporary steam bypass"; and (6) "[f]abricate and install trench piping."

Haskell appears to ask that we simply accept, without any predicate facts to explain what these items are and how they relate to a refinery's function, that items such as a new sulfur storage tank, a cooling water supply and return, and a calcined coke loadout structure are integral systems in a refinery and not, like the freezer tunnel system in Condit and the BAES in Puente, accoutrements to the manufacturing process taking place within. It asserts that a majority of its work "was, in fact, structural in nature," and that "the piping Haskell repaired or replaced was required 'to maintain the structure' as a refinery." But again, it cites no facts to support these assertions.[16] Haskell's unsupported assertions that its work at the Cherry Point refinery contributed to the construction, alteration, or repair of structural improvements and/or integral systems are insufficient to meet its initial burden on summary judgment to establish that there are no genuine issues of material fact. See Jacobsen, 89 Wn.2d at 108 (party moving for

---

[16] Haskell cites the CR 30(b)(6) deposition of Fred Haskell, for the proposition that "Haskell was not contracted to work on the process piping, only on the heating piping," and, in particular, " 'plumbing work, waste and vents, water piping, heating systems, and hot water.' " But it is apparent that in the cited testimony, Fred Haskell was describing Haskell's involvement during the initial construction of the Cherry Point refinery. That testimony is irrelevant to the activities that are the basis for the Welches' claims herein, i.e., Haskell's alleged removal of insulation in the 1980s, after the refinery was complete.

No. 83745-1-I/24

summary judgment must prove by "uncontroverted facts" that there is no genuine issue of material fact).

We reverse the summary judgment dismissal of the Welches' claims against both Brand and Haskell and remand for further proceedings consistent with this opinion.[17]

_____
Chung, J.

WE CONCUR:

_____          _____
Mann, J.                                   Dwyer, J.

---

[17] Because we reverse on the basis of each defendant's failure to satisfy its initial burden on summary judgment, we need not reach the Welches' argument that reversal is also required with regard to Haskell because Welch's asbestos exposure occurred while Haskell was still performing its services and, thus, the statute of repose is not even at issue. We note, however, that the Welches fail to support this argument with reasoned analysis, including by explaining the legal significance of the date of Welch's alleged exposure in the context of a statute of repose inquiry. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").